# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL S. SALLIS,  )<br>  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of the Social  )<br>Security Administration,  )<br>  )<br>    Defendant.  ) | Case No. CIV-13-419-SPS |

## OPINION AND ORDER

The claimant Carl S. Sallis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim for child's insurance benefits if the claimant is 18 years old or older and alleges a disability that began before attaining 22 years of age. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 15, 1987, and was twenty-four years old at the time of the administrative hearing (Tr. 609, 621). He completed ninth grade while taking special education classes, and has no past relevant work (Tr. 26, 104). The claimant alleges that he has been unable to work since December 14, 2009, due to a learning disability, stuttering, and depression (Tr. 104).

**Procedural History**

On May 25, 2010, the claimant applied for child's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 12, 2012 (Tr. 14-28). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform a wide range of work at all exertional levels, but that he had the nonexertional limitations of only performing simple routine tasks ordinarily associated with unskilled work (Tr. 18). The

ALJ then concluded that although the claimant had no past relevant work to which he could return, he was nevertheless not disabled because there was work he could perform, *i. e.*, cleaner/janitor, kitchen helper, hand packager (the light and medium exertion levels), and assembler (Tr. 27).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find that he meets either Listing 12.05B or 12.05C, (ii) by failing to fully develop the record, (iii) by failing to properly assess his severe and nonsevere impairments at all steps of the evaluation process, and (iv) by failing to perform a proper credibility analysis. The Court finds the claimant's third contention persuasive.

The ALJ determined that the claimant had the severe impairments of major depressive disorder, generalized anxiety disorder, and a learning disability (Tr. 16). The medical evidence related to the claimant's physical impairments reveals that the claimant had a fracture dislocation on his hand and underwent a closed manipulative reduction and K-wire fixation of the right fifth carpometacarpal joint. He missed one follow-up appointment and at a later appointment reported that the hand was sore and very stiff (Tr. 582). That same day, they removed the pins in his hand one week early, because they did not believe he would make it back for another appointment (Tr. 582). The physician's assistant noted that the surgeon showed the claimant exercises to do with his hand, and that if he did not do them he would have a very limited range of motion (Tr. 582). They reported he was still hesitant, and noted they would need another x-ray of the hand in the future (Tr. 582).

As to his mental impairments, B. Todd Graybill, Ph.D., assessed the claimant at a psychological evaluation on June 25, 2007 (Tr. 147). He administered the WAIS-III exam to the claimant, but stated that the claimant did not take it in a valid manner, due to extremely poor effort. Although the claimant was able to follow and retain simple directions, his scores were Verbal 58, Performance 56, and Full Scale 53, but Dr. Graybill did not consider these test results valid (Tr. 147). On October 22, 2009, Dr. Graybill once again administered the WAIS-III without procuring valid testing results (Tr. 288). Dr. Graybill noted that the claimant had an extremely poor effort, mostly replied "I don't know" to questions, and did not seem to attempt to do his best (Tr. 288). The scores on the test were Verbal 61, Performance 59, and Full Scale 57 (Tr. 288).

On August 16, 2010, Larry Vaught, Ph.D., conducted a third evaluation of the claimant's mental impairments. Dr. Vaught again noted that the claimant had very poor performance and effort. When administered the WAIS-III, the claimant obtained a Verbal score of 56, a performance score of 53, and a full scale score of 50 (Tr. 289). Dr. Vaught considered the claimant's responding to be inconsistent, and that he had difficulty with very simple items (Tr. 290). In summary, he stated that the claimant did not show a lot of emotion, but was plaintive in describing his psychiatric condition; that he described a regressive lifestyle in which he tended to stay at home, and had anxiety in the public; and that he was extremely deficient in the area of concentration, persistence, and pace, often incorrectly transposing symbols on his performance (Tr. 290). Dr. Vaught believed the WAIS-III scores were a substantial underestimate of his intellectual skills, and

recommended looking at his previous educational/medical records for better understanding (Tr. 290). Though requested, none of these records were located.

The claimant received treatment at Bill Willis Mental Health Services and Substance Abuse Center ("Bill Willis"), and was assessed with schizophrenia paranoid type and bi-polar NOS, along with a global assessment of functioning ("GAF") score of 46 (Tr. 331). Although the claimant missed a number of appointments, notes from appointments he did attend indicate that they worked on being able to go out in the community more, but he reported feeling better when he was in the house (Tr. 315-337). He was also treated at Green Country Behavioral Health Services, and diagnosed with major depressive disorder, recurrent, severe, with psychotic features; and generalized anxiety, along with a GAF of 45 (Tr. 539). The claimant reported hospitalization for a suicide attempt, but aside from an unclear code reference (Tr. 444) in one page of a hospital record, the only documentation is the claimant's own reports (Tr., *e. g.*, 108, 289, 326).

On April 16, 2011, Beth Jeffries, Ph.D., conducted a mental status examination of the claimant. Based on the claimant's reports, she had concerns that the claimant was excessively using prescription drugs, but also recommended evaluation by a psychiatrist because she believed he could benefit from medication intervention (Tr. 525). She also noted the claimant's reports of past suicidal ideation, and she believed he was almost randomly endorsing symptoms because he was unable to provide details (Tr. 526). She estimated his intelligence in the average range, with an estimated IQ of 80 (Tr. 527). He did not complete the concentration and memory area of the evaluation due to poor effort

(Tr. 527). She found his judgment and insight were mildly impaired, and diagnosed him with mood disorder NOS r/o, adult antisocial behaviors, and malingering r/o (Tr. 527). As to the task-oriented portion of the exam, the claimant performed poorly. When she asked him to read a sheet of paper that stated, "CLOSE YOUR EYES," the claimant briefly closed his eyes but told her that he could not read the paper – she believed he instinctively closed his eyes when he read the paper despite his claims that he could not read it (Tr. 528).

State reviewing physician Dorothy Millican-Wynn, Ph.D., reviewing the evidence in the record and concluded that the claimant had moderate limitations in all three areas of function limitation (Tr. 303). In completing a mental RFC assessment, she concluded that the claimant had marked limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 307-308). She opined that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation (Tr. 309).

In his written opinion, the ALJ summarized the claimant's testimony as well as much of the medical record. She found that the claimant did not meet a Listing (either 12.05B or 12.05C) because he did not have a valid IQ score in the record, specifically noting the concerns related to the claimant's efforts in each of the IQ evaluations (Tr. 18). At step four, she evaluated the evidence related to the claimant's mental impairment, but did not discuss any of his physical impairments or the effect of his consistently sub-50

GAF scores (Tr. 18-26). The ALJ then discredited the claimant's testimony and found him not disabled.

The claimant's contention is that the ALJ's RFC does not reflect the extent of his impairments because she disregarded evidence of his mental impairment and did not accurately evaluate his physical impairments. As to his physical limitations, he argues that the ALJ failed to account for his complaints of pain related to, *inter alia*, a wrist injury. Because the ALJ did find that the claimant had the severe impairments of major depressive disorder, generalized anxiety disorder, and learning disability, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-1124 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment

simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the ALJ did not even acknowledge that the claimant *had* any physical impairments (despite documented evidence of hand surgery and concerns regarding mobility of his hand in the record), much less consider the "cumulative effect of claimant's impairments," at step four. *Langley v. Barnhart*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

Furthermore, the ALJ did not even mention, much less discuss, the varying mental health diagnoses, nor did she discuss the various GAF scores contained in the record, all of which were below 50. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply rejecting the claimant's sub-50 GAF scores as "not dispositive," the ALJ should have determined whether such low GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do

not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").

The difficulty obtaining a valid IQ score is readily demonstrated by the three attempts in the record, and thus the claimant's ability to meet a Listing is likely not available, *see* 20 C.F.R. pt. 404, subpt. P., app. 1, Listing 12.05C (Intellectual Disability). Although it is true that a proper rejection of an IQ score as invalid is a sufficient basis for an ALJ to find that a claimant does not meet Listing 12.05C, *see Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007), some of the deficits identified in that testing should nevertheless have been accounted for in the claimant's RFC, including the repeated documented evidence of problems relating to the public and actually going out in public, as well as problems related to concentrating and completing tasks. But in any event, because the ALJ failed to properly account for the *all* the claimant's impairments at step four, both mental and physical, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**